# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WOODROW WILSON, III,
      Petitioner,

vs.

WARDEN, LEBANON CORRECTIONAL
INSTITUTION,
      Respondent.

Civil Action No. 1:04-cv-206

Weber, J.
Black, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus

pursuant to 28 U.S.C. §2254. This matter is before the Court upon the petition (Doc. 1),

respondent's return of writ and exhibits thereto (Docs. 6, 7), and petitioner's traverse. (Doc. 17).

## I.    FACTS

This case involves the following facts, as summarized by the Twelfth District Ohio Court

of Appeals:[1]

> {¶ 1} Defendant-appellant, Woodrow Wilson III, appeals his convictions and
> sentences on three counts of aggravated robbery with firearm specifications
> following a jury trial in the Clermont County Court of Common Pleas.
>
> {¶ 2} Late afternoon on August 14, 2000, Ronald Strunk was working at the
> Subway restaurant on Eastgate South Drive in Union Township, Clermont County
> ("Eastgate Subway") when a white male wearing a black knit hat pulled low over
> his eyebrows and an untucked tee shirt walked in. Strunk recognized the
> individual as someone who had been in the restaurant earlier that day. The man
> handed Strunk a brown paper bag and a note which read in part "this is a
> robbery," then stated "you know what to do." The man also lifted his tee shirt to
> display the black handle of a silver semi-automatic gun which was tucked in his
> waistband. Strunk took the paper bag, put $250 from the cash register into the
> bag, and handed the bag back to the individual, who then casually left the

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the
absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487,
493-94 (6th Cir. 2004).

restaurant. The entire robbery lasted 30 to 45 seconds. Later that day, Strunk met with Detective John Lucas of the Union Township Police Department to prepare a composite of the robber.

{¶ 3} A few days later, Strunk was with a friend in the parking lot of a pizzeria in nearby Mt. Carmel when he noticed a man "look[ing] just dead-on" like the individual who had robbed the Eastgate Subway. The individual and two other persons got into a 1994 purple Chevrolet Cavalier and drove off. Strunk and his friend followed them to an apartment complex in Mt. Carmel where they lost track of them. Strunk provided the police with the description and the license plate number of the Cavalier.

{¶ 4} On August 16, 2002, a few minutes before the store's 8:00 p.m. closing time, Barbara Jarvis was working alone at the Wonder Hostess store on State Route 28 in Miami Township, Clermont County when she noticed a white male wearing a black knit toboggan hat pulled down over his ears milling around the store. The man was also wearing a tee shirt and a pair of shorts. The hat made Jarvis leery of the man, but she convinced herself that the man possibly had cancer. Around closing time, as the man was lingering in the store, Jarvis turned off some lights and started sweeping the rugs. Eventually, the man asked her which register was open. Jarvis directed him to a register, walked around him to get to the register, and rung up a box of cereal the man had. As Jarvis turned to tell the man how much he owed, the man lifted his tee shirt to display the black handle of a semi-automatic gun which was tucked in his waistband. At the same time, the man handed Jarvis a brown paper bag and said "you know what to do with this, don't you?" Jarvis opened the cash register, put over $700 from the cash register into the bag, and handed the bag back to the individual. The man started walking towards the doors, turned around, reached for the box of cereal, and warned Jarvis not to call anyone for one to two minutes. He then left the store. Detective Matthew Davis of the Miami Township Police Department responded to the scene. Later that evening, he and Jarvis prepared a composite of the robber.

{¶ 5} On the afternoon of August 22, 2000, Angela Herlinger was working at the Futon store in Eastgate, two doors away from the Eastgate Subway. Herlinger was daydreaming at the store counter, which was 40 feet from the store's glass windows, when she noticed a white male walking past the Futon store in the direction of the Eastgate Subway. This particular individual attracted Herlinger's attention because she thought at first he was a high school acquaintance. It took 30 to 40 seconds for the individual to walk from one end of the Futon store to the other hand. In his hand was a small black item which was consistent with the size and shape of a winter knit hat.

{¶ 6} That same afternoon, Diane Jones was working at the Eastgate Subway when a white male wearing a black winter hat and an untucked tee shirt walked

2

in. Jones approached the counter to take the man's order. On the counter was a brown paper bag. The man took a step back, lifted his tee shirt to display the black handle of a gun which was tucked into his waistband, and said "now you know what to do with the bag." Jones went to the cash register, put about $140 from the cash register into the bag, and handed the bag back to the individual, who then "strolled out" of the restaurant. The entire robbery lasted approximately one minute. Jones later met with Det. Lucas to prepare a composite of the robber.

{¶ 7} During his investigation, Det. Lucas learned that the Cavalier was owned and driven by a Clifford Rose, who liked to "hang out" with an individual named Shane Davidson and appellant. Several photographic arrays, including one with a picture of Rose and one with a picture of Davidson, were shown to Strunk and Jones. Neither one identified the robber in those arrays. Two photographic arrays with a picture of appellant were eventually shown to Strunk and Jones. Each clerk separately identified appellant as the robber in both arrays. In November 2000, Jarvis, Jones, and Herlinger viewed a lineup composed of appellant and five inmates. All six men were dressed in jail garb. All three women separately identified appellant as the robber.

{¶ 8} Appellant was indicted on three counts of aggravated robbery in violation of R.C. 2911.01(A)(1) with firearm specifications in violation of R.C. 2941.145(A). On June 29, 2001, a jury found appellant guilty as charged. Following a sentencing hearing, appellant was sentenced to three consecutive seven-year prison terms for the aggravated robberies and three consecutive three-year prison terms for the firearm specifications, for a total stated prison term of 30 years.

(Doc. 6, Exh. 19 at 1-5).


## II. PROCEDURAL HISTORY

Petitioner was indicted by the Clermont County Grand Jury in November 2000 on three counts of aggravated robbery with firearm specifications in violation of Ohio Rev. Code § 2911.01(A)(1). (Doc. 6, Exh. 2).

On February 5, 2001, petitioner, through counsel, filed a motion to suppress eye-witness identification. (Doc. 6, Exh. 3).  On March 19, 2001, petitioner filed a motion for separate trials of the respective counts in the indictment. (Doc. 6, Exh. 4).  On June 27, 2001, following

3

hearings on both motions, the court denied both motions. (Doc. 6, Exhs. 5, 6, 7).

The case proceeded to jury trial.  The jury found petitioner guilty on all counts. (Doc. 6, Exhs. 8A-8C, 9).  In a Judgment Entry filed on August 21, 2001, petitioner was sentenced to consecutive terms of seven years on each of the three counts of aggravated robbery and an additional three years on each of the three firearm specifications for a total prison term of thirty years. (Doc. 6, Exhs. 10, 11).

Represented by new counsel, petitioner filed a timely appeal of his conviction and sentence.  He asserted the following assignments of error:

I. The trial court erred to the prejudice of appellant in entering judgments of conviction after a trial in which the prosecutor committed misconduct constituting a violation of appellant's right to due process of law under the 14th Amendment to the U.S. Constitution, and Art. I, §16 of the Ohio Constitution.

II. The trial court erred to the prejudice of the appellant in overruling his motion to suppress identification, in violation of appellant's right to due process of law under the 14th Amendment to the U.S. Constitution, and Art. I §16 of the Ohio Constitution.

III. The trial court erred to the prejudice of appellant in overruling his motion to sever the counts for trial, in violation of appellant's right to due process of law under the 14th Amendment to the U.S. Constitution, and Art. I §16 of the Ohio Constitution.

IV. The trial court erred in imposing a sentence which was excessive under Ohio law, and in violation of appellant's right to due process of law, and in violation of appellant's right to due process of law under the 14th Amendment to the U.S. Constitution, and Art. I §16 of the Ohio Constitution, and his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and Art. I §9 . . . of the Ohio Constitution.

V. The judgments of conviction are contrary to law and to the due process clause of the Fourteenth Amendment to the Constitution of the United States in that there was insufficient evidence adduced to establish each and every element of each offense beyond a reasonable doubt.

VI. The judgments of conviction are contrary to the manifest weight of the evidence.

4

VII. The trial court erred to the prejudice of appellant by denying his motions for judgment of acquittal pursuant to Crim. R. 29.

VIII. The trial court erred in refusing to permit the defense to present evidence of an exculpatory statement made to police by appellant without requiring appellant to testify.

IX. The trial court erred to the prejudice of appellant by overruling his motion to dismiss the count involving the alleged robbery of the Hostess store after the prosecutor failed to assert in opening statement that such offense occurred in Clermont County, Ohio, in violation of appellant's right to due process of law under the 14th Amendment to the U.S. Constitution, and Art. I §16 of the Ohio Constitution.

(Doc. 6, Exh. 14).  After full briefing by both parties (Doc. 6, Exhs. 15-18), the appellate court

affirmed the judgment of the trial court on September 9, 2002. (Doc. 6, Exh. 19).

Petitioner timely appealed to the Supreme Court of Ohio and raised the following

propositions of law:

**Proposition of Law I**: Egregious prosecutorial misconduct, which prejudices the right of the accused to the fundamentally fair trial to which he is constitutionally entitled violates his right to due process of law under the Fourteenth Amendment to the U.S. Constitution and Art. I §16 of the Ohio Constitution.

**Proposition of Law II:** The admission of identification evidence which is the product of unnecessarily suggestive procedures employed by law enforcement constitutes a violation of a defendant's right to due process of law under the 14th Amendment of the U.S. Constitution and Art. I §16 of the Ohio Constitution.

**Proposition of Law III:** Where three offenses are joined in an indictment and it appears that the defendant is prejudiced by the joinder of those offenses for trial, on motion of the defendant and for good cause show, the trial court must sever the counts for trial.

**Proposition of Law IV:** A statement of a defendant to police in criminal case is not hearsay where it is offered by the defendant merely to prove that the statement was made, and is not offered to prove the truth of the statement itself, and the refusal of the court to admit the statement violates the defendant's right to a fair trial under the due process clause of the 14th Amendment, and Art. I §16 of the Ohio Constitution.

**Proposition of Law V:** Where the prosecution, in opening statement, fails to state that the offense occurred in the county in which the offense is being tried, the denial of a defense motion to dismiss violates the right of the accused to due process of law under the 14th Amendment and Art. §16 of the Ohio Constitution.

**Proposition of Law VI:** A conviction of a firearm specification where the operability of the firearm is not proved beyond a reasonable doubt violated the proscription against convictions on insufficient evidence embodied in the due process clauses of the Fourteenth Amendment and Art §16 of the Ohio Constitution.

(Doc. 6, Exh. 21). On January 29, 2003, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. 6, Exh. 23).

On March 17, 2004, petitioner filed a Petition for Writ of Habeas Corpus in this Court raising the following grounds for relief:

**GROUND ONE**: Egregious prosecutorial misconduct which prejudices the accused to a fundamentally fair trial to which he is constitutionally entitled violated Petitioner's right to due process of law under the 14th Amendment to the United States Constitution and Art. I §10 & §16 of the Ohio Constitution.

**GROUND TWO**: The admission of identification evidence which is the product of unnecessarily suggestive investigation procedures employed by law enforcement constitutes a violation of a defendants right to a fair trial and due process of law under the 14th Amendment to the United States Constitution.

**GROUND THREE**: Where three offenses are joined in an indictment and it appears that the defendant is prejudiced by the joinder of those offenses for trial, on motion of the defendant and for good cause show, the trial court must sever the counts for trial.

**GROUND FOUR**: A statement of a defendant to police in a criminal case is not hearsay where it is offered by the defendant merely to prove that the statement was made, and is not offered to prove the truth of the statement itself, and the refusal of the court to admit the statement violates the defendant's right to a fair trial under the due process clause of the 14th Amendment, & Article I, §10 & §16 of the Ohio Constitution.

**GROUND FIVE**: Where the prosecution, in opening statement, fails to state that the offense occurred in the county in which the offense is being tried, the denial of a defense motion to dismiss violates the right to the accused to due process of

6

law under the 14th Amendment, and Article I, §10 & §16 of the Ohio
Constitution.

**GROUND SIX**: A conviction of a firearm specification where the operability of
the firearm is not proved beyond a reasonable doubt violated the proscription
against conviction on insufficient evidence embodied in the due process clause of
the Fourteenth Amendment and Art .I §10 & §16 of the Ohio Constitution.

(Doc. 1).

## III.  GROUND ONE IS PROCEDURALLY DEFAULTED AND WAIVED

In recognition of the equal obligation of the state courts to protect the constitutional

rights of criminal defendants and in order to prevent needless friction between the state and

federal courts, a state criminal defendant with federal constitutional claims is required fairly to

present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c).

If he fails to do so, but still has an avenue open to him by which he may present the claims, his

petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459

U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a

procedural default, the petitioner can no longer present his claims to a state court, he has also

waived them for purposes of federal habeas review unless he can demonstrate cause for the

procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v.

Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v.

Sykes*, 433 U.S. 72, 87 (1977).

Federal courts may not consider "contentions of federal law that are not resolved on the

merits in the state proceeding due to petitioner's failure to raise them as required by state

procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  "In all cases in which a state prisoner

has defaulted his federal claims in state court pursuant to an independent and adequate state

procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

(1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

The "cause and prejudice" analysis of the test also applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)).

Petitioner's first ground for relief asserts that prosecutorial misconduct violated his right to a fair trial under the Fourteenth Amendment.[2]  Petitioner states that the prosecutor, during

_____

[2]      To the extent petitioner alleges that the prosecutor improperly alluded to matters not substantiated by the record "throughout" his criminal trial and elicited testimony from witnesses that he knew was misleading or incorrect (Doc. 1 at ¶12(A)), this claim of prosecutorial misconduct was never raised in the state courts below and is

8

closing arguments, falsely stated that all five eyewitnesses had identified petitioner in all three robberies and improperly referred to the pretrial hearing on petitioner's motion to suppress identification.  Petitioner contends that the prosecutor in effect argued facts not in evidence nor substantiated by the record in an effort to bolster the identification of petitioner in each robbery.

Respondent contends that this claim is procedurally defaulted because petitioner failed to make a contemporaneous objection to the alleged misconduct during trial.

The Ohio court of appeals, in reviewing this claim, noted that petitioner failed to object to any of the prosecutor's alleged improper comments, and thus waived all but plain error under Ohio Criminal Rule 52(B).  (Doc. 6, Exh. 19 at 25).  The court of appeals reviewed the actions of the prosecutor in the context of the trial and determined that such actions did not amount to plain error. (Doc. 6, Exh. 19 at 25-29).

Under Ohio law, the failure to raise a contemporaneous objection to a perceived error in the trial court constitutes a procedural bar to review of the error on direct appeal.  *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000) (citing Ohio R. Crim. P. 52; *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977) (citations omitted)), *cert denied*, 531 U.S. 1021 (2000)).  However, Ohio courts may perform a limited review of the record to ensure that the alleged error does not amount to a plain error affecting a substantial right.  Crim. R. 52.(B); *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369 (1996).  The primary issue in the plain-error review is whether the outcome of the trial clearly would have been different without the error. *State v. Braden*, 98 Ohio St.3d 354, 362, 785 N.E.2d 439, 452 (2003) (citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus).

---

thus waived.  *See* 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan v. Boerckel,* 526 U.S. 838, 847-48 (1999).

Although the Ohio court of appeals reviewed petitioner's claim under the plain error rule, such review did not constitute a waiver of the procedural default by petitioner.  The Sixth Circuit has long held that plain-error review by the state courts does not constitute a waiver of state procedural default rules.  *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)).  More importantly for this case, the Sixth Circuit has consistently held that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice.  *See Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 423-24 (6th Cir. 2003); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour*, 224 F.3d at 557; *Scott v. Mitchell*, 209 F.3d 854, 866-71 (6th Cir. 2000).  Accordingly, if the record shows that the state courts actually enforced the waiver doctrine and undertook only plain-error review of an issue, the habeas petitioner must show cause and prejudice for the procedural default or a fundamental miscarriage of justice in order to merit federal review.

In the instant case, the Ohio court of appeals explicitly found that petitioner failed to object to the alleged prosecutorial misconduct at trial.  The Ohio court of appeals reviewed petitioner's claim under a plain error standard, concluding that the claim lacked merit.  (Doc. 6, Exh. 6 at 25-29).  Therefore, petitioner has procedurally defaulted this issue.

Petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claim for relief is not addressed on the merits by this Court.  Moreover, he has failed to establish "cause" for his procedural default in the state courts.

To the extent petitioner intimates his trial and appellate counsels' ineffectiveness

constitutes "cause" for his procedural default (Doc. 17 at 13), his contention is without merit.

The ineffective assistance of counsel may constitute cause for a procedural default, but only so

long as such claim has been presented to the state courts, and is not itself procedurally defaulted.

*Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (citing *Murray,* 477 U.S. at 488-89).

Here, however, petitioner has never challenged the effectiveness of his trial or appellate

counsel in the state courts.  Because petitioner never properly presented the claim that trial or

appellate counsel was constitutionally ineffective to the state courts, he is precluded from

asserting this claim as cause for his procedural default.  *See Edwards*, 529 U.S. at 452.

Accordingly, Ground One of the petition should be dismissed due to petitioner's failure

to establish cause and prejudice for his procedural default.


## IV.  GROUND FOUR IS PROCEDURALLY DEFAULTED AND WAIVED

Ground Four of the petition states:

A statement of a defendant to police in a criminal case is not hearsay where it is
offered by the defendant merely to prove that the statement was made, and is not
offered to prove the truth of the statement itself, and the refusal of the court to
admit the statement violates the defendant's right to a fair trial under the due
process clause of the 14th Amendment, & Article I, §10 & §16 of the Ohio
Constitution.

(Doc. 1, ¶12(D)).

At trial, the defense sought to admit evidence of an exculpatory statement made by

petitioner to an investigating officer during the early stages of the investigation.  When the trial

court refused to permit the exculpatory statement into evidence at the trial, defense counsel

proffered evidence of a statement made by petitioner to Detective Lucas concerning petitioner's

whereabouts on August 14, 2000 and August 22, 2000, the two dates on which the robberies

11

occurred. (*See* Doc. 7, Tr. 272-78; *see also* Doc. 6, Exh. 14 at 14).  Detective Lucas's report

indicates that petitioner claimed to be at Coney Island with friends on August 14, 2000, and at

his mother's house in New Richmond on August 22, 2000 during the times of the robberies.

(Doc. 7, Tr. 272).  On direct appeal, petitioner argued the statements were not hearsay and that

the "omission of this evidence is prejudicial, as the jury should have been permitted to consider

that Appellant explained his alibi, and the alibi was not the product of recent fabrication." (Doc.

6, Exh. 14 at 14).

     In addressing this claim, the Twelfth District Court of Appeals, the only state court to

address the merits of this claim, stated:

> {¶ 54} During the defense portion of his trial, appellant sought to admit evidence,
> through Det. Lucas, of an exculpatory statement appellant had made to the
> detective. The statement was a self-serving explanation of appellant's
> whereabouts on August 14 and 22, 2000 and tended to exculpate appellant from
> involvement in the two Eastgate Subway robberies. The state opposed the
> admission of the statement, arguing that it was hearsay unless appellant testified.
> The trial court agreed with the state and denied appellant's motion to admit the
> statement into evidence. The statement was then proffered into evidence.
>
> {¶ 55} Evid. R. 801(C) defines hearsay as "a statement other than one made by
> the declarant while testifying at the trial or hearing, offered in evidence to prove
> the truth of the matter asserted." Appellant's exculpatory statement, his alibi for
> August 14 and 22, 2000, was clearly hearsay as it was offered to prove the truth
> of the matter asserted. "Coming as it did during the defense, * * * it borders on an
> attempt to introduce a self-serving affidavit during trial, which of course clearly is
> inadmissible under the circumstances. If appellant wanted the exculpatory
> material brought before the jury[,] he could not do so through the mouth of
> another, thereby obviating the possibility of cross-examination." State v.
> Gatewood (1984), 15 Ohio App.3d 14, 16, 472 N.E.2d 63.
>
> {¶ 56} Under Evid. R. 801(D), prior statements by a witness and admissions by a
> party-opponent are not hearsay even though the statements or admissions are
> offered for their truth and fall within the basic definition of hearsay. However,
> Evid. R. 801(D)(1) requires that the declarant testify at trial and be subject to
> cross-examination concerning the statement. Because appellant did not testify at
> trial, his exculpatory statement did not fall under Evid. R. 801(D)(1).

{¶ 57} Evid. R. 801(D)(2), likewise, provides that an admission by a party-opponent is not hearsay if "the statement is offered against a party * * *." "While the term 'admission' appears to imply that the out-of-court statement must be a confession or statement against interest, in actuality, any prior statement of a party is admissible providing it is offered against the party at trial." State v. Baker (2000), 137 Ohio App.3d 628, 652, 739 N.E.2d 819, quoting Weissenberger's Ohio Evidence (1998) 367, Section 801.33. In the case at bar, the state did not attempt to introduce appellant's exculpatory statement, but in fact objected to its admission. Because appellant's exculpatory statement was offered for him and not against him, it did not fall under Evid. R. 801(D)(2).

{¶ 58} Upon reviewing the numerous exceptions to the hearsay rule, we find that appellant's exculpatory statement does not fall under any of the exceptions. We therefore find that the trial court properly refused to allow appellant's exculpatory statement during the course of defense. Gatewood, 15 Ohio App.3d at 16, 472 N.E.2d 63. Appellant's eighth assignment of error is overruled.

(Doc. 6, Exh. 19 at 22-24).

Respondent contends that petitioner's Fourth Ground for relief is not cognizable in this habeas corpus proceeding because petitioner argued this claim on direct appeal solely as a matter of state law, and the Ohio court of appeals likewise treated this claim as one solely based on state law.

In his petition for writ of habeas corpus, petitioner actually alleges an entirely new claim with regard to the hearsay question. He now claims he "had been questioned by police in regards to another unrelated crime that was being investigated by another member of law enforcement. When this officer was talking to him he had provided information to this officer that would have been impossible for him to have committed these crimes [since] he was with this officer at the time of one of these robberies." (Doc. 1 ¶12(D)). Petitioner's traverse further explains that the officer to whom he refers is one Detective Mark Penn, who was the investigating officer, and that the information possessed by Penn would have exonerated petitioner of the second robbery. Petitioner states: "The 'specific circumstances of the crime'

13

which Officer Penn could have attested to would have been that he knew/knows that Woodrow Wilson was not at the scene where a specific robbery [was being committed] because he [Wilson] was with Officer Penn." (Doc. 17 at 10).

Petitioner is attempting to raise a new claim in Ground Four based on the prosecution's alleged withholding of Officer Penn's testimony in support of petitioner's alibi defense. However, no claim was ever presented to or considered by the state courts regarding an exculpatory statement made to Detective Penn that was improperly excluded from evidence. (*See* Doc. 1, Appendix; Doc. 6, Exh. 14).

By thus failing to fairly present the federal constitutional claim alleged in Ground Four to the Ohio courts, petitioner committed a procedural default.  Therefore, he has waived this claim for purposes of federal habeas corpus review unless he establishes cause for the default and actual prejudice as a result of the alleged error, or demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485.

Petitioner has not provided any justification as "cause" for his procedural default.  He also has not shown that failure to consider this claim will result in a "fundamental miscarriage of justice."  Thus, Ground Four of the petition is waived to the extent petitioner now alleges a violation of his federal due process rights based on the alleged withholding of evidence from Detective Penn.[3]

---

[3]　　In any event, the Court is precluded from reviewing Ground Four of the petition to the extent petitioner contends he is entitled to relief based on alleged violations of state law.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Moreover, on the basis of the instant

**V.  GROUND FIVE IS NOT COGNIZABLE IN FEDERAL HABEAS CORPUS**

Petitioner's Fifth Ground for relief asserts that the prosecuting attorney failed to allege that the third robbery involving the Hostess Store occurred in Clermont County, the county in which the offense was being tried.  Petitioner claims the trial court's denial of his motion to dismiss on the basis of the prosecutor's failure to allege venue violated his right to due process.

In presenting this claim to the state courts on direct appeal, petitioner relied entirely on Ohio law with a general passing reference to due process.  (Doc. 6, Exh. 14 at 15, Exh. 20 at 11-12).  This federal court may review petitioner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988).  A violation of state law is not cognizable in a federal habeas corpus proceeding, and petitioner has not demonstrated how this error constitutes a fundamental miscarriage of justice or a violation of his right to procedural due process of law. *See Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir.), *cert. denied*, 525 U.S. 1025 (1998).

Nor did petitioner's passing reference to the due process clause in presenting this claim on direct appeal adequately apprise the state courts of the constitutional nature of petitioner's claim, since the only legal theory presented to the state courts was predicated entirely upon state law. *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987).  Accordingly, petitioner's state law claim asserted in Ground Five of the petition is not cognizable on habeas review and should be

---

record, the Court cannot discern any basis for finding that any error in this regard was so egregious as to result in a denial of a constitutionally fair proceeding.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

dismissed.

## VI.  GROUND TWO IS WITHOUT MERIT

Ground Two of the petition asserts the trial court erred in overruling petitioner's motion to suppress eyewitness identification, contending that the procedures used for the photo arrays and the lineup were unduly suggestive and violated petitioner's right to a fair trial and due process. Petitioner argues that law enforcement personnel presented witnesses with a six photo array, and when they were unable to identify a suspect, the officers removed one photo and replaced it with a photo of petitioner taken outdoors.

In addressing the merits of petitioner's claim, the Twelfth District Court of Appeals, the last state court to issue a reasoned opinion on the claim, found the following:

> {¶ 12} Courts apply a two-step test when determining the admissibility of challenged identification testimony. First, the defendant must show that the pretrial identification procedure was unduly suggestive. If the defendant meets this burden, the court must then consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. See Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243.  Suggestiveness depends on several factors, including the size of the array, its manner of presentation, and its contents. Reese v. Fulcomer (C.A.3, 1991), 946 F.2d 247, 260.

> {¶ 13} With regard to photographic arrays, the test is "whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." Jarrett v. Headley (C.A.2, 1986), 802 F.2d 34, 41 (brackets in original). It is not a requirement that all pictures in a photographic array be of the same type. State v. Green (1990), 67 Ohio App.3d 72, 79, 585 N.E.2d 990.

> {¶ 14} Appellant first challenges his identification from the photographic arrays. Appellant contends that his picture was "highlighted" in that (1) his picture was the only picture taken in an outside setting, and (2) "before [his] photo was added to the array, the very same array (with someone else's photo substituted for [a]ppellant) had been previously shown to the witnesses, and the witnesses had

16

indicated that the robber was not among the photos."

{¶ 15} A hearing on appellant's motion to suppress revealed that Strunk was shown seven arrays while Jones was shown six arrays (she was not shown the fifth array). All seven arrays consisted of photographs of six white males. The first five arrays did not include a picture of appellant and neither Strunk nor Jones identified the robber in those arrays. Then, Det. Lucas showed both Strunk and Jones a photographic array (exhibit 6) with a picture of appellant. Both witnesses separately identified appellant as the robber. Jones told the detective that she was 70% certain that appellant was the robber but that she wanted to see appellant in person. Det. Lucas did not tell Jones whether she had correctly identified appellant as the robber. Strunk told the detective he was 90% certain that appellant was the robber but wanted to see a more recent picture of appellant. Both Strunk and Jones testified that they were not coaxed into selecting appellant's picture.

{¶ 16} Thereafter, Det. Lucas showed both Strunk and Jones another photographic array (exhibit 7) with a more recent picture of appellant. Except for appellant's picture, all the pictures in exhibit 7 were the same pictures that were in exhibit 6. In addition, except for appellant's picture and another picture which were switched, the pictures in exhibit 7 were in the exact same order as in exhibit 6. Appellant's picture was the only picture taken in an outside setting. Again, both Strunk and Jones identified appellant as the robber. Jones told the detective that she was 75% certain that appellant was the robber. She later identified appellant in the lineup. Strunk positively identified appellant as the robber.

{¶ 17} Upon reviewing the photographic arrays shown to Strunk and Jones, we are satisfied that the arrays and the procedure used in this case were not unduly suggestive. Exhibit 6 was the first array to include appellant's picture. While it shared pictures with two previous photographic arrays, it is not true that "before [a]ppellant's photo was added to the array, the very same array (with someone else's photo substituted for Appellant) had been previously shown to the witnesses." With the exception of one picture (not appellant's picture), the array consisted of pictures of white males in the same age group and with roughly similar builds and features.

{¶ 18} Strunk and Jones were separately shown the array and both identified appellant as the robber. Neither witness was coaxed into selecting appellant's picture. There was nothing about the array or the procedure used by the detective in presenting it to the witnesses which encouraged either Strunk or Jones to identify appellant as the robber. In addition, both Strunk and Jones had the opportunity to view appellant as they were only a few feet away from appellant during the robberies. It is true that when they were shown exhibit 7, appellant's picture was the only one taken in an outdoor setting. We find, however, that this fact itself did not make the array unduly suggestive. By the time they were shown

17

exhibit 7, both Strunk and Jones had already identified appellant as the robber. We therefore find that the trial court properly denied appellant's motion to suppress the photographic array identification.

{¶ 19} Appellant also challenges his identification by Herlinger from the lineup. While working at the Futon store two doors down from the Eastgate Subway, Herlinger noticed a man walking past her store in the direction of the Eastgate Subway a few minutes before the Subway was robbed. This individual attracted Herlinger's attention because she thought he was a high school acquaintance. Herlinger was never shown photographic arrays, but was asked to come to the Clermont County Jail to view a lineup. When she arrived at the jail, appellant and his mother were in the waiting room. Upon recognizing appellant as the man who had walked past the Futon store, Herlinger immediately told the receptionist who she was. Soon after, Det. Lucas took Herlinger to another room. Herlinger testified that during the five minutes she was in the waiting room with appellant, there was no interaction between the two of them. While viewing the lineup, Herlinger asked that appellant and the five other persons turn to their right. Upon viewing the men's left profile, Herlinger identified appellant as the man who had walked past the store. Herlinger testified that she was not coaxed into selecting appellant.

{¶ 20} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Davis, 76 Ohio St.3d 107, 112, 1996-Ohio-414. "However, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime." Id.

{¶ 21} Upon reviewing the record, we find that the encounter in the waiting room and the subsequent lineup were not so unnecessarily suggestive and conducive to irreparable mistaken identification that appellant was denied due process. Nothing in the record indicates that the government arranged the confrontation between Herlinger and appellant. Herlinger testified she noticed the man walking past her store because he looked like someone she knew. Upon viewing appellant's left profile at the lineup, she identified appellant as being the man she had seen. The independent origin of Herlinger's identification of appellant makes the inadvertent confrontation in the waiting room prior to the lineup not prejudicial to appellant. See United States v. Monroe (C.A.6, 1987), 833 F.2d 95; United States v. Matlock (C.A.6, 1974), 491 F.2d 504, certiorari denied (1974), 419 U.S. 864, 95 S.Ct. 119.

{¶ 22} We therefore find that the trial court properly denied appellant's motion to suppress the lineup identification. Appellant's second assignment of error is overruled.

18

(Doc. 6, Exh. 19 at 6-11).

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decision of the Ohio court of appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

19

Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000).

A conviction based on identification testimony that follows a pretrial identification violates due process when "the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994), *cert. denied,* 515 U.S. 1145 (1995)(quoting *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986), *cert. denied,* 482 U.S. 918 (1987)) (in turn quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)). It is the likelihood of misidentification which violates the defendant's due process right. *Neil v. Biggers,* 409 U.S. 188, 198 (1972). The due process standard is premised on the concern that the trustworthiness of an eyewitness's identification can be easily undermined by improper police suggestion in circumstances where there already is a danger of misidentification because the witness is called upon to identify a stranger observed only briefly, under poor conditions, at a time of extreme emotional stress and excitement. *See Manson v. Brathwaite,* 432 U.S. 98, 112 (1977); *Simmons,* 390 U.S. at 383-84; *United States v. Russell,* 532 F.2d 1063, 1066 (6th Cir. 1976). Therefore, the determination whether the eyewitness's identification testimony is admissible at trial turns on the reliability of that testimony. *Manson,* 432 U.S. at 114; *see also Summitt v. Bordenkircher,* 608 F.2d 247, 251 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders,* 449 U.S. 341 (1981).

The Court must engage in a two-step analysis in deciding whether the accused's right to due process has been violated through the use of a pretrial identification procedure. The Court must first consider whether the procedure was unduly suggestive. *Ledbetter,* 35 F.3d at 1070-71

20

(citing *Thigpen,* 804 F.2d at 895). The defendant bears the burden of proving this element. *Id.* at 1071 (citing *United States v. Hill,* 967 F.2d 226, 230 (6th Cir.), *cert. denied,* 506 U.S. 964 (1992)). If the Court finds that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the trial identification was nevertheless reliable. *Id.*; *see also Neil,* 409 U.S. at 199-200. The factors to be considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification. *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199-200; *United States v. Gatewood,* 230 F.3d 186, 193 (6th Cir. 2000), *cert. denied,* 534 U.S. 1107 (2002); *Ledbetter,* 35 F.3d at 1071.

Here, petitioner does not contend that the Ohio court of appeals used a standard of law contrary to established federal law, as determined by the Supreme Court. Instead, petitioner maintains that the Ohio court unreasonably applied controlling federal law to his case.

This Court is mindful that a state court's adjudication is not "unreasonable" "simply because [a federal habeas court] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Instead, petitioner must show that the state court's application of the above cited Supreme Court precedent was objectively unreasonable. *Bell*, 535 U.S. at 694.

Petitioner contends the photo array containing his photo which was taken outdoors was unduly suggestive. Contrary to petitioner's contention, courts have found that photographic displays are not "unduly suggestive even when certain characteristics of the defendant or his

photograph are set apart from others." *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991) (rejecting petitioner's claim that his photograph was distinctive within a display of seven photographs because only it depicted a man with long sideburns and a card revealing his name and height); *see also United States v. Perry*, 991 F.2d 304, 311 (6th Cir. 1993) (defendant's photograph that is only one lacking "mug shot" lines in background not unduly suggestive); *United States v. Maguire*, 918 F.2d 254, 265 (1st Cir. 1990) (reviewing cases rejecting argument of impermissible subjectivity in photospreads because only the defendant was wearing an earring; or had beard and braids; or had dreadlocks and hair covering), *cert. denied*, 499 U.S. 950 (1991); *U.S. v. Dowling*, 855 F.2d 114, 117 (3d Cir. 1988), *aff'd*, 493 U.S. 342 (1990) (fact that defendant was only person in display of six who wore a red tee-shirt was not suggestive when other men also wore colored tee-shirts and "were comparable in dress and appearance").

Petitioner has not established that the use of an outdoor background was sufficient to distinguish him from the other photographs presented.  Petitioner does not dispute the Ohio court of appeals' finding that with one exception not involving petitioner, the photo array displayed white males in the same age group and with roughly similar builds and features.  In light of the many similarities between the men pictured, the fact that the background on petitioner's photo was different does not make the photo spread unduly suggestive.

Thus, the Court finds petitioner has failed to carry his initial burden of demonstrating that the photographic identification was impermissibly suggestive.  *See* 28 U.S.C. § 2254(e)(1).

Petitioner also contends that the witness identifications were not sufficiently reliable because the witnesses had only 30 to 60 seconds at the most with the robber and the witnesses were undoubtedly stressed during the robberies.  He also contends that the record fails to show

"with any certainty how much attention was paid to detail." (Doc. 17 at 9). Petitioner cites to the testimony of witness Angela Herlinger who testified she was sitting in the futon store "daydreaming" when a man walked past her location toward the Subway Store. *Id*.

Even assuming that the use of an outdoor photograph of petitioner in the photo array and the lineup procedures were unnecessarily suggestive, the witness identifications were nevertheless reliable under the "totality of the circumstances." *Biggers*, 409 U.S. at 199.

Ronald Strunk, the witness to the first robbery, testified he was in the presence of the robber for approximately 30 to 45 seconds while facing the robber from across the service counter. (Doc. 6, Exh. 6 at Tr. 100, 105). Strunk testified he was approximately one to two feet from the robber and had an unobstructed view of the robber. (Doc. 6, Exh. 6 at Tr. 107). Strunk testified he was "not really" nervous about the encounter. (Doc. 6, Exh. 6 at Tr. 100). Strunk provided a description of the robber to police. (Doc. 6, Exh. 6 at Tr. 101). When reviewing the photo array at the police station less than one month later, Strunk was 90% certain petitioner was the robber. (Doc. 6, Exh. 6 at Tr. 33, 101). At the suppression hearing, Strunk testified there was "no doubt" in his mind that the defendant was the man who robbed him. (Doc. 6, Exh. 6 at Tr. 108-09). Strunk testified that the police officers did not in any way direct his attention to petitioner's photograph when he reviewed the photo arrays. (Doc. 6, Exh. 6 at Tr. 109).

Diane Jones, who witnessed the robbery on August 22, 2000, also testified at the suppression hearing. She testified that her encounter with the robber occurred across the service counter and lasted approximately one minute. (Doc. 6, Exh. 6 at Tr. 130). She was approximately two to three feet away from the robber and had an unobstructed view of him from the waist up. (Doc. 6, Exh. 6 at Tr. 139-140). She stated that the robber wore a black knit ski hat, had a fuzzy

goatee on his chin, was approximately five foot nine inches tall, and weighed about 170 pounds. (Doc. 6, Exh. 6 at Tr. 130, 137-138).  She testified that at the time of the robbery, she felt calm and "tried to take everything in as much as I could."  (Doc. 6, Exh. 6 at Tr. 132).  When showed the photo array approximately two weeks later, Jones observed someone she was "75% sure" was the robber and requested to see the person face-to-face to confirm her identification.  (Doc. 6, Exh. 6 at Tr. 32-33, 141).  She was given the opportunity to view a lineup and, after leaving the viewing room and taking some time to collect her thoughts, positively identified petitioner as the robber.  (Doc. 6, Exh. 6 at Tr. 145).  She testified that the detectives in no way suggested or directed her attention to any particular person in the lineup.  (Doc. 6, Exh. 6 at Tr. 146).  She testified that her ability to physically view petitioner in person, to hear him speak, and observe his mannerisms led to her identification of petitioner as the robber.  (Doc. 6, Exh. 6 at Tr. 147-48). Jones testified there was no doubt in her mind that petitioner was the man who robbed her.  (Doc. 6, Exh. 6 at Tr. 147).

Angela Herlinger also testified at the suppression hearing.  She testified that on August 22, 2000, she was doing paperwork at the futon store and "staring into space" when she noticed a man who resembled someone with whom she went to high school walking by the store.  (Doc. 6, Exh. 6 at Tr. 111).  She testified she specifically paid attention to the individual because she thought he looked like a high school acquaintance.  (Doc. 6, Exh. 6 at Tr. 120).  She described the person as five foot seven or eight inches tall, not much out of high school, with sandy brown hair and muscular build.  (Doc. 6, Exh. 6 at Tr. 112).  She testified she viewed him for approximately ten seconds while he walked the length of the glass storefront towards the Subway Store from a distance of approximately 40 feet.  (Doc. 6, Exh. 6 at Tr. 114, 118).  When she arrived at the

24

police station to view a lineup, she observed petitioner in the waiting room area where she had

entered. (Doc. 6, Exh. 6 at Tr. 114-115). She advised the receptionist and was led to another

room. *Id*. Herlinger testified that no police officer or any other individual directed her attention

to petitioner. (Doc. 6, Exh. 6 at Tr. 121, 126). At the lineup, she requested a profile view. (Doc.

6, Exh. 6 at Tr. 117, 125). When she observed the left profiles of the individuals, Herlinger

positively identified petitioner as the robber. (Doc. 6, Exh. 6 at Tr. 117, 126). Herlinger testified

she was "certain" the person she identified at the lineup, *i.e.*, petitioner, was the person she

observed walking past the front of her store. (Doc. 6, Exh. 6 at Tr. 126).

A review of the *Manson* and *Neil* factors persuades the Court that the Ohio court of

appeals did not unreasonably apply them in deeming the witnesses's identifications reliable. *See

Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199-200. As noted by the Ohio court of appeals, both

Strunk and Jones had the opportunity to view petitioner during the robberies from a very short

distance. Although Herlinger was some 40 feet away when she observed petitioner, her attention

was drawn to him because of his resemblance to a high school acquaintance. Each of the

witnesses had a more than adequate amount of time to observe petitioner when their attention was

specifically focused on him. The descriptions of the suspect given by the witnesses to police are

fairly detailed and consistent and match those given in court. All the witnesses demonstrated a

high level of certainty in identifying petitioner as the perpetrator. Each testified that their

identification was not influenced or coaxed by the police in any way. There was a relatively short

period of time between the robberies and subsequent identifications at the photo arrays and

lineups. There is no evidence that the encounter between Herlinger and petitioner at the police

station was arranged by the police or influenced Herlinger's subsequent identification of

petitioner after the lineup.  Rather, upon observing the left profile of petitioner during the lineup,

petitioner positively identified petitioner as the person who walked by her store on the day in

question.   These factors weigh heavily in favor of the reliability of the identification made by the

witnesses.

Upon review of the record, this Court concludes that the Ohio court of appeals' rejection

of petitioner's challenge to the pretrial identification was based on a reasonable assessment of the

facts in light of the record evidence and was neither contrary to nor involved an unreasonable

application of clearly established federal law as determined by the United States Supreme Court

in the *Neil* and *Manson* decisions.

Accordingly, petitioner is not entitled to habeas corpus relief with respect to his Second

Ground for relief.


## VII.  GROUND THREE IS WITHOUT MERIT

In Ground Three of the petition, petitioner claims he was denied due process when the

trial court denied his motion to sever the three aggravated robbery counts where identification of

the robber was the primary issue.

In addressing this assignment of error, the Twelfth District Court of Appeals stated:

{¶ 48} Appellant argues that it was error for the trial court to deny his motion to
sever the three aggravated robbery counts where identification of the robber was
the primary issue. Appellant contends that the joinder of the offenses
"impermissibly encouraged the jury to 'stack' evidence admissible with respect to
one of the crimes with charges involving the others, without any evidence of a
nexus between them, other than a superficial similarity, encouraging the jury to
convict on charges in which the evidence against [a]ppellant was weaker * * *."

{¶ 49} The decision on the issue of severance is left to the discretion of the trial
court. Braxton v. Maxwell (1965), 1 Ohio St.2d 134, 135, 205 N.E.2d 397. The

law favors joinder of multiple offenses and such joinder is liberally permitted if the offenses are of the same or similar character. Crim. R. 8(A); State v. Schaim, 65 Ohio St.3d 51, 600 N.E.2d 661, 1992-Ohio-31. In the case at bar, the charges against appellant involved similar instances of aggravated robbery. Therefore, we conclude that joinder was proper under Crim. R. 8(A). Where joinder is otherwise proper, Crim. R. 14 requires the accused to show that his rights will thereby be prejudiced.

{¶ 50} The state may counter an accused's claim of prejudice from joinder of multiple offenses in one of two ways, namely, the "other acts" test, or the "joinder" test. State v. Franklin (1991), 62 Ohio St.3d 118, 122, 580 N.E.2d 1, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315.  The other acts test requires the state to show that evidence of one offense would have been admissible at the trial of another offense under the other acts portion of Evid. R. 404(B). Id. The joinder test merely requires the state to show that "the evidence of each of the crimes is simple and direct." Id. The accused is not prejudiced by joinder when there is simple and direct evidence for each crime, regardless of whether evidence of the other crimes is admissible under Evid. R. 404(B). Id. If the state can meet the joinder test, it need not meet the stricter requirements of the other acts test. Id.

{¶ 51} We find that the joinder test is met in the instant case. Evidence of each crime was simple and distinct. As the trial court found, "although undoubtedly terrifying to the victims, the robberies were simple holdups, nothing more." Each of the counts involved separate incidents involving three different victims and occurring on three different dates, and the jury had the benefit of hearing all three victims separately describe the incidents. In addition, the trial court instructed the jury to consider each count and the evidence applicable to each count separately. It is presumed that the jury will obey the trial court's instructions. State v. Dunkins (1983), 10 Ohio App.3d 72, 73, 460 N.E.2d 688.

{¶ 52} We therefore find that appellant was not prejudiced by the joinder of the offenses arising out of the aggravated robberies, and that the trial court did not abuse its discretion by denying appellant's motion to sever. Appellant's third assignment of error is overruled.

(Doc. 6, Exh. 19 at 20-22).

Under Ohio law, the trial court's decision to join the offenses is reviewed for abuse of discretion.  See State v. Torres, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981).  To obtain federal habeas relief, however, petitioner must establish that the joinder violated his federal constitutional rights. Bean v. Calderon, 163 F.3d 1073, 1084 (9th Cir. 1998), cert. denied, 528 U.S. 922 (1999);

*Lucero v. Kerby,* 133 F.3d 1299, 1313 (10th Cir.), *cert. denied,* 523 U.S. 1110 (1998); *Corbett v. Bordenkircher,* 615 F.2d 722, 724 (6th Cir.), *cert. denied,* 449 U.S. 853 (1980).  "Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *U.S. v. Lane*, 474 U.S. 438, 446 n.8 (1986).  Petitioner must establish that the "simultaneous trial of more than one offense" rendered his trial "fundamentally unfair and hence, violative of due process." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citations omitted).  To prevail on his claim, petitioner must show that "the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Lane*, 474 U.S. at 449 (citations omitted); *see also Davis*, 384 F.3d at 638 (citations omitted).

Applying this standard, the Supreme Court in *Lane* identified a number of factors which showed that misjoinder was harmless in that case, including the overwhelming evidence of guilt, the fact that limiting instructions were given to the jury, and the fact that evidence concerning the misjoined counts would have been admissible in separate trials absent joinder.  *Id*. at 450.  In evaluating whether a defendant has been prejudiced to the extent that joinder of offenses violated the defendant's right to due process, other courts have examined factors such as the jury instructions provided, the prosecutor's statements about "other acts" evidence, whether there is a great disparity in the amount of evidence underlying the joined offenses, and whether the evidence with respect to each of the offenses is sufficiently distinct. *Bean,* 163 F.3d at 1084-85; *Lucero,* 133 F.3d at 1314-15.  As under Ohio law, prejudice generally will not be found from joinder "when the evidence of each crime is simple and distinct, even in the absence of cross-

28

admissibility." *Bean,* 163 F.3d at 1085 (citing *United States v. Johnson,* 820 F.2d 1065, 1071 (9th Cir. 1987) and *Drew v. United States,* 331 F.2d 85, 91 (D.C. Cir. 1964)).

In this case, petitioner asserts that the joinder of the robbery counts enabled the prosecutor "to twist testimony of witnesses and mislead the jury to obtain a conviction. This is apparent in the closing argument by the prosecutor where he combines the testimony of all the witnesses[.] [T]o hear the prosecutor tell it, every witness was at [EVERY SEPARATE ROBBERY] and [POSITIVELY IDENTIFIED] the petitioner as the person committing these robberies." (Doc. 1 at ¶12(C))(emphasis in the original).

The Court is not persuaded by petitioner's argument. During closing arguments, the prosecutor acknowledged the crucial issue in the case was one of identification of the perpetrator. (Tr. 302). Although the prosecutor made several references to the "five eyewitnesses" who identified petitioner as the robber, when taken in the context of the prosecutor's entire closing argument, the jury instructions given by the trial court, and the evidence presented at trial on each separate crime, it is clear the jury could not mistakenly construe the prosecutor's statements to mean each witness observed each separate crime.

In his closing argument, the prosecutor discussed not only the similarities between the crimes, but also the particular facts surrounding each eyewitnesses' testimony unique to each crime and the particular witness's identification of petitioner. (Tr. 309-312).

When instructing the jury, the trial judge emphasized that petitioner was presumed innocent and that the prosecution bore the burden of establishing petitioner's guilt beyond a reasonable doubt. (Doc. 7, Tr. 338-39). The jury was also instructed that "[T]he charge set forth in each count in the indictment and your consideration of each lesser included offense constitutes

29

a separate and distinct matter.  You must consider each count and each lesser included offense and the evidence applicable to each count and each lesser included offense separately, and you must state your finding as to each count or offense uninfluenced by your verdict as to the other counts or offenses.  The defendant may be found guilty of none, or one, or more of the offenses charged or the lesser included offenses." *Id*. at 357.  Jurors are presumed to "carefully follow instructions," *Morgan v. Shirley*, 958 F.2d 662, 668 (6th Cir.1992) (quoting *Francis v. Franklin*, 471 U.S. 307, 325 n. 9 (1985)); *see also Spencer v. Texas,* 385 U.S. 554, 562 (1967), and the trial court's  instructions minimized any potential prejudice to petitioner by the joinder of the offenses.

Furthermore, as the Ohio court of appeals correctly observed, evidence of each robbery was simple and distinct.  Each of the counts involved separate incidents involving three different victims and occurring on two different dates.  At the trial, the jury had the benefit of hearing the three victims to each of the robberies separately describe the incidents in which each was involved.  In light of the above authority and facts, the Court concludes that the Ohio court of appeals' decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, the Court concludes upon review of the trial transcript that petitioner was not denied due process by the joinder of the offenses, and, therefore, petitioner is not entitled to habeas corpus relief with respect to the claim of improper joinder alleged in Ground Three.

## VIII.  GROUND SIX IS WITHOUT MERIT

Ground Six of the petition alleges that petitioner's convictions of firearm specifications on

30

each count were not supported by sufficient evidence in violation of the Due Process Clause

because the operability of the weapon was never established at trial beyond a reasonable doubt.

In overruling this assignment of error, the state appellate court hearing petitioner's direct

appeal made the following findings regarding his claim of insufficient evidence to convict:

{¶ 36} Appellant also challenges the guilty verdicts as to the firearm specifications on the ground that the state failed to establish beyond a reasonable doubt that the firearm displayed during all three robberies was operable.

{¶ 37} R.C. 2929.14(D)(1)(a)(i) requires the imposition of a three-year additional prison term if it is found that the offender had a "firearm" while committing a felony. However, before the offender can receive an enhanced penalty pursuant to R.C. 2929.14(D)(1)(a)(i), the state must present evidence beyond a reasonable doubt that the firearm was operable at the time of the offense. R.C. 2923.11(B)(1); State v. Murphy (1990), 49 Ohio St.3d 206, 551 N.E.2d 932.

{¶ 38} In proving the operability of a firearm, the state need not produce the gun or offer direct, empirical evidence that the gun is operable. Id. at 209, 551 N.E.2d 932. Rather, "a firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable * * *, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Thompkins, 78 Ohio St.3d at 385, 678 N.E.2d 541; see, also, R.C. 2923.11(B)(2). Proof of the operability of the firearm can also be established "by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." Murphy at syllabus.

{¶ 39} In the case at bar, all three robbery victims testified that a gun was displayed briefly from beneath the tee shirt of appellant. Both Strunk and Jarvis described the gun as a semi-automatic gun with a black handle. Jones simply described the weapon as a gun tucked into appellant's waistband. "This brief display of the firearm under the circumstances can only be described as an implicit threat to coerce the victim[s] into complying with the aims of the perpetrator." State v. Gest (1995), 108 Ohio App.3d 248, 263, 670 N.E.2d 536 (finding that firearm was operable where offender stole car of pizza deliveryman by briefly displaying pistol from beneath his shirt). We find that from this brief act of displaying the firearm, the jury could infer operability of the weapon. Id. at 264, 670 N.E.2d 536; see, also, State v. Stewart (Mar. 25, 1988), Lucas App. No. L-87-194. We therefore find that the evidence presented at trial established beyond a reasonable doubt that in all three robberies, the firearm used was operable.

31

(Doc. 6, Exh. 19 at 15-17).

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id*. In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).

Therefore, the question for this Court is whether the Ohio court of appeals' application of the "no rational trier of fact" test, as articulated in *Jackson* and adopted as a matter of Ohio law in *State v. Jenks*, 61 Ohio St.3d 259 (1991), was contrary to or an unreasonable application of that test to the facts of this case.

Petitioner does not dispute the factual findings of the state appellate court. He argues,

32

however, that the evidence at trial failed to show the robber ever removed the gun from his pants, pointed the gun, or fired the gun, thereby showing the weapon was operable.  (Doc. 1 at ¶12(F)). However, contrary to petitioner's contention, the State need not present scientific proof that a firearm is "operable," but may present circumstantial evidence showing either an explicit or implicit threat to use an apparent firearm to shoot a victim.  *See State v. Thompkins* (1997), 78 Ohio St.3d 380, 384, 678 N.E.2d 541 (1997); *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990).

Upon review of the entire record, this Court agrees with the finding of the state court of appeals that from the testimony from witnesses Jarvis, Jones and Strunk the jury could infer operability of the weapon beyond a reasonable doubt.  When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and for the reasons discussed by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions on the firearm specifications.  Therefore, Ground Six of the petition is without merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to Grounds One and Four of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is

correct in its procedural ruling" as required under the first prong of the *Slack* standard.[4]  In addition, a certificate of appealability should not issue with respect to the remaining claims alleged in the petition, which were addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  7/19/2006                                       s/Timothy S. Black
                     KI                                Timothy S. Black
                                                       United States Magistrate Judge

---

[4]       Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim.  *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WOODROW WILSON, III,
      Petitioner,

vs.

WARDEN, LEBANON CORRECTIONAL
INSTITUTION,
      Respondent.

Civil Action No. 1:04-cv-206

Weber, J.
Black, M.J.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).